❏ Original          ❏ Dup

**CLERK'S OFFICE**
**A TRUE COPY**
May 04, 2022
s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| Information associated with the following Facebook user "Ayo | ) |
| Wayne" [ID #100000327458565], stored at premises owned, | ) |
| maintained, controlled, or operated by Meta Platform Inc. | ) |

Case No. **22-M-455 (SCD)**
Matter No. 2022R00157

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. § 2711(3)(A)(i).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      5-18-22      *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Stephen C. Dries .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      5-4-22 2:05 pm                    *Judge's signature*

City and state:    Milwaukee, Wisconsin              Honorable STEPHEN C DRIES Magistrate Judge
                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to be Searched**

**Matter No. 2022R157**

To the extent that the information described in Attachment B is within the possession, custody, or control of Facebook that is stored at premises owned, maintained, controlled or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California, Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| Ayo Wayne | 100000327458565 | October 01, 2020 to December 31, 2020 |

**Particular Things to be Seized**

**Matter No. 2022R157**

I.      **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

   a.   All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

   b.   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

   c.   All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

   d.   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.     All "check ins" and other location information;

g.     All IP logs, including all records of the IP addresses that logged into the account;

h.     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.     All information about the Facebook pages that the account is or was a "fan" of;

j.     All past and present lists of friends created by the account;

k.     All records of Facebook searches performed by the account;

l.     All information about the user's access and use of Facebook Marketplace;

m.     The types of service utilized by the user;

n.     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

3

**II.       Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, §§ 1951 (Hobbs Act Robbery) and 924(c) (Brandishing a Firearm During the Commission of a Crime of Violence), from October 01, 2020 to December 31, 2020, for the user ID's identified on Attachment A, information pertaining to the following matters:

> (a) The relevant offense conduct, any preparatory steps taken in furtherance of the criminal scheme, and communications between Dwayne PERKINS, and others related to the relevant offense conduct of robbery or Dwayne PERKINS's possession of a firearm.

> (b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

> (c) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

> (d) The identity of the person(s) who created or used the user ID; and

> (e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of robbery.

4



CLERK'S OFFICE
A TRUE COPY
May 04, 2022
s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Information associated with the following Facebook user "Ayo Wayne" [ID #100000327458565], stored at premises owned, maintained. controlled, or operated by Meta Platform Inc. | ) ) ) |

Case No. **22-M-455 (SCD)**

Matter No. 2022R00157

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I. a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. § 2711(3)(A)(i).

located in the            District of                 , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❒ contraband, fruits of crime, or other items illegally possessed;
- ❒ property designed for use, intended for use, or used in committing a crime;
- ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951 | Hobbs Act Robbery |
| 18 U.S.C. § 924(c) | Brandishing a Firearm During the Commission of a Crime of Violence. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ❒ Delayed notice of     days *(give exact ending date if more than 30 days:*         *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA David Bianchi

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

       telephone                *(specify reliable electronic means).*

Date:    5-4-22

*Judge's signature*

City and state:    Milwaukee, Wisconsin            Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT
# MATTER NO. 2022R157

I, David Bianchi, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1.    I make this affidavit in support of an application for search warrant for information associated with the following Facebook user "Ayo Wayne" [ID #100000327458565] that is stored at premises owned, maintained, controlled, or operated by Meta Platform Inc. ("Meta") a company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachment A and B.   This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platform Inc to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.    I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2020. Since September 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3.    This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other federal, state, and local law enforcement officers during

the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, official records, citizen witnesses' statements, recorded statements, law enforcement surveillance, surveillance video, social media, court records, telephone records, and public records which I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

4. Based on the investigation to date, I submit that there is probable cause to believe that DWAYNE PERKINS (XX/XX/1989) conspired with known and unknown individuals to committed an armed robbery in Milwaukee, Wisconsin, on November 23, 2020, in violation of Title 18, United States Code, §§ 1951 (Hobbs Act Robbery) and 924(c) (Brandishing a Firearm During the Commission of a Crime of Violence).

5. This affidavit is submitted in support of an application for a search warrant for Dwayne PERKINS's Facebook Account, for evidence of Perkins's and others' involvement in the above described offenses on November 23, 2020. More specifically, I seek authorization to search Facebook's information associated with Dwayne PERKINS, who is the user associated with the Facebook accounts with the following user names and ID numbers:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) |
|---|---|
| Ayo Wayne | 100000327458565 |

6. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts I believe are pertinent to establishing the necessary foundation for the warrant.

## II.     PROBABLE CAUSE

### November 23, 2020 - Boost Mobile

7.      On November 23, 2020 at approximately 4:32 PM, two individuals (Boost Suspect #1 and PERKINS) entered the east door of Boost Mobile, located at 2851 N Doctor Martin Luther King Jr Drive, Milwaukee, Wisconsin. Boost Suspect #1 and PERKINS spoke with the two store employees, S.A. (DOB XX/XX/1977) and R.H. (XX/XX/1977) for several minutes. At approximately 4:34 PM, a third individual (Boost Suspect #3) entered the north door of the business. Boost Suspect #3 produced a black handgun and made S.A. and R.H. lie on the ground. Boost Suspect #3 made S.A. and R.H. crawl to the storage area in the back of the store where Boost Suspect #1 zip-tied R.H. and Boost Suspect #3 zip-tied S.A. on the ground. Boost Suspect #3 ordered S.A. and R.H. to open the safe, however, they were unable to because they were zip-tied. Boost Suspect #3 then returned to the register area where he loaded a duffel bag with five new cell phones and approximately $1,532 U.S. currency. All three suspects then exited the store and fled in a southwest direction.

8.      Boost Suspect #1 was described as a black male, approximately 5'06" tall, approximately 19-21 years of age.

9.      Suspect #2 (PERKINS) was described as a black male, approximately 5''06" tall, approximately 19-21 years of age.

10.     Boost Suspect #3 (DAVIS) was described as a black male, approximately 6'00" tall, approximately 29-31 years of age, heavyset, wearing a blue construction hat and a "Carhart" style winter jacket, and carrying a black duffel bag.

11.     In-store video surveillance corroborates the accounts of S.A. and R.H.

**Arrest of Co-Actor**

12.     On December 16, 2020, Boost Suspect #3, Carlos DAVIS was arrested by members of the FBI Milwaukee Area Violent Crime Task Force (MAVCTF). DAVIS was indicted in the Eastern District of Wisconsin for two counts of 18 U.S.C. § 1951 (Hobbs Act Robbery) and one count of 18 U.S.C. § 924 (c) (Brandishing a Firearm During the Commission of a Crime of Violence).

**Debrief with CI-1**

13.     On December 07, 2021 and February 10, 2022, Agents from the FBI MAVCTF met with CI-1 who provided information from the November 23, 2020 robbery. CI-1 advised that Carlos DAVIS, Gregory BELL, and Dwayne PERKINS committed the robbery on November 23, 2022.   CI-1 indicated DAVIS and PERKINS met approximately two years prior and had maintained contact up to the time of the robbery.

14.     CI-1 stated that on the day of the robbery, DAVIS, PERKINS, and BELL, who were together from earlier in the day, drove to the Boost Mobile. PERKINS and BELL walked in the store first in order to determine how many customers were inside at the time. When they determined that they were ready to commit the robbery, either PERKINS or BELL texted DAVIS to advise DAVIS they were ready.

15.     After the robbery took place, DAVIS dropped PERKINS off at a shelter on Wells Street.

16.     CI-1 stated that approximately two days after the robbery, DAVIS, PERKINS, and BELL drove down to Chicago together to sell the stolen phones. PERKINS and BELL waited at a friend's house while DAVIS sold the phones to a known fence. During the trip to Chicago, all three parties were using their phones.

17.     CI-1 identified PERKINS's Facebook username as "Ayo Wayne", which returned to the account: facebook.com/dwayne.perkins.5. The Facebook user ID associated with this account is 100000327458565. A publicly viewable search of PERKINS's Facebook pictures matched the known photographs of PERKINS which were previously located in various law enforcement databases.

18.     CI-1's information is credible and reliable because CI-1 is providing information based on CI-1's personal knowledge and observations and said information has been corroborated by electronic surveillance and phone extractions. CI-1 is cooperating for consideration on several felony crimes including robbery and firearm offenses. CS has a felony conviction for robbery.

### Search DAVIS's Phone

19.     During the arrest of DAVIS, case agents seized DAVIS' cellphone. Based on prior federal search warrants, case agents believed DAVIS' phone was being used on and around the time of the robbery. Case agents obtained a forensic examination of the contents of DAVIS' cell phone, which corroborated CI-1 statements regarding DAVIS' contacts with PERKINS on and around the day of the robbery. Case agents located both text messages and Facebook messages between DAVIS and PERKINS.

20.     On November 23, 2020, DAVIS exchanged several text messages with the telephone number 414-999-6870, labeled as contact "Wayne". One of the text messages sent from the "Wayne" to DAVIS at 11:11 AM stated, "Ima be on the block b folks finna drop me off ina min." The text message corroborates CI-1's statements that DAVIS and PERKINS were together before the robbery took place on November 23, 2020.

21.     On November 29, 2020, DAVIS received a text message from contact "Wayne" that stated, "Yooo b da cable still on over der n shit I'm tryna grab deez iPhone 12's n flip em."

Based on my training, experience, and investigation into this robbery, this message was constant with PERKINS and DAVIS attempting to make money on iPhones.

22.     Case agents also located several Facebook messages on DAVIS' phone between DAVIS and "Ayo Wayne", identified by CI-1 as PERKINS.  On December 2, 2020, DAVIS messaged "Ayo Wayne", "Shit what's the word you disappear on us gang that shit crazy I thought we was all locked in." "Ayo Wayne" responded "Nah b I was knocked the fuck out dat day nbs I been hitting yo line n shit." "Ayo Wayne" and DAVIS then made plans to meet up.  The next day, "Ayo Wayne" asked DAVIS, "Ayo b what buddy at the cellphone store on 27th ah buy da 12pro fa" and DAVIS responded "950".  DAVIS later messages "Ayo Wayne" and states "I got 190 for another one bro so if u get one I get one too."  Case agents found additional Facebook messages on DAVIS' cellphone between "Ayo Wayne" and DAVIS on December 3, 2020 discussing obtaining an ID and going to do "the phone shit."

23.     The date range of October 1, 2020 to December 31, 2020 would allow evidence, including articles of clothing, vehicles, weapons, associates, and the planning and preparation of the violations in question to be identified by investigators.

## III.     FACEBOOK INFORMATION

24.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

25.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresseses, physical address (including city, state,

and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

26.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

27.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

28.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A

7

particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

29.     Facebook users can upload photos and videos to be posted on their Wall, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Meta's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

30.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages, voice, and videos through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

31.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or

8

content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

33. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

34. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

36. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

37. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

38. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

9

39.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group.  Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

40.     Meta uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

41.     Meta also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

42.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

10

43.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).   In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.   Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

44.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.   Further, Facebook account activity can show how and when the account was accessed or used.   For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.   By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.   Such information allows

11

investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Meta builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

45. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## IV. INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

46. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## V. JURISDICTION

47. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

12

(c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## VI.    CONCLUSION

48.    Based upon the facts contained within this affidavit, I believe that probable cause exists to search Dwayne PERKINS's Facebook Account, "Ayo Wayne" [ID #100000327458565], for further evidence of his and others' involvement in the violations of Title 18, United States Code, §§ 1951 (Hobbs Act Robbery) and 924(c) (Brandishing a Firearm During the Commission of a Crime of Violence).

49.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**<u>ATTACHMENT A</u>**

**Property to be Searched**

**Matter No. 2022R157**

To the extent that the information described in Attachment B is within the possession, custody, or control of Facebook that is stored at premises owned, maintained, controlled or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California, Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| Ayo Wayne | 100000327458565 | October 01, 2020 to December 31, 2020 |

14

## ATTACHMENT B

### Particular Things to be Seized

### Matter No. 2022R157

I. **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

    a.    All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    b.    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

    c.    All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

    d.    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers;

15

future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.      All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.      All "check ins" and other location information;

g.      All IP logs, including all records of the IP addresses that logged into the account;

h.      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.      All information about the Facebook pages that the account is or was a "fan" of;

j.      All past and present lists of friends created by the account;

k.      All records of Facebook searches performed by the account;

l.      All information about the user's access and use of Facebook Marketplace;

m.      The types of service utilized by the user;

n.      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.      All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.      All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

16

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, §§ 1951 (Hobbs Act Robbery) and 924(c) (Brandishing a Firearm During the Commission of a Crime of Violence), from October 01, 2020 to December 31, 2020, for the user ID's identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the criminal scheme, and communications between Dwayne PERKINS, and others related to the relevant offense conduct of robbery or Dwayne PERKINS's possession of a firearm.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the user ID; and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of robbery.

17